**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| SynQor, Inc.<br><br>      Plaintiff,<br><br> v.<br><br>Cisco Systems, Inc.<br><br>      Defendant. | Civ. No. 2:14-cv-286-MHS-CMC<br><br>**JURY TRIAL DEMANDED** |

**<u>SYNQOR'S RESPONSE TO CISCO SYSTEMS, INC.'S SUPPLEMENTAL</u>**
**<u>CLAIM CONSTRUCTION BRIEF</u>**

## TABLE OF CONTENTS

                                                                                                **Page**

I. Legal Standards ................................................................................................................. 2

II. The Claim Language Supports SynQor's Proposed Construction. .................................... 2

      A. SynQor's Proposed Construction Reflects the Ordinary Meaning of the Claim Language and Is Supported By the Context in Which It Is Used in the Claims. ..................................................................................................................... 2

      B. Cisco's Attempt to Use the Term "Fixed Duty Cycle" To Limit the Term "Isolation Stage" Is Flawed. .................................................................................... 4

III. SynQor's Proposed Construction Is Supported By the Specification. ............................... 5

IV. There Is No Clear and Unambiguous Disavowal During Prosecution That Would Limit the Term "Isolation Stage" to Only Unregulated and Semi-Regulated Isolation Stages. ................................................................................................................. 6

V. The Record in the '497 Case Does Not Support Cisco's Proposed Construction. ............. 9

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ecolab, Inc. v. FMC Corp.*,
   569 F.3d 1335 (Fed. Cir. 2009)..................................................................................2, 6

*In re Flugence*,
   738 F.3d 126 (5th Cir. 2013) ...........................................................................................9

*InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*,
   690 F.3d 1318 (Fed. Cir. 2012)........................................................................................3

*Omega Eng'g, Inc. v. Raytek Corp.*,
   334 F.3d 1314 (Fed. Cir. 2003)........................................................................................3

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (en banc)........................................................................2

*Salazar v. Procter & Gamble Co.*,
   414 F.3d 1342 (Fed. Cir. 2005)........................................................................................8

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996)..........................................................................................6

*Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*,
   239 F.3d 1225 (Fed. Cir. 2001)........................................................................................3

**OTHER AUTHORITIES**

Webster's Third New Int'l Dictionary (1993) ....................................................................8

On April 30, 2014, in accordance with Cisco's request, the Court ordered the parties to submit briefing concerning "the proper construction of the term 'isolation stage' in claim 28 of U.S. Patent No. 7,072,190."  (Dkt 64.)  The parties' proposed constructions of this term are:

| "Isolation Stage" ||
| --- | --- |
| SynQor's Proposed Construction | Cisco's Proposed Construction |
| "A stage that provides isolation." | "A non-regulating or semi-regulating isolation stage." |

The parties agree that "isolation" means "[t]he absence of an electric path permitting the flow of DC current (other than a *de minim[i]s* amount) between an input and an output of a particular stage, component or circuit."  (Dkt. 4 at 34.)

SynQor's proposed construction is simply the ordinary meaning of the term, and is supported by the claim language and the specification.  Cisco's proposed construction, on the other hand, attempts to read in a limitation requiring that the isolation stage be "non-regulating or semi-regulating."  Cisco does not point to anything in the claim language or the specification that would support reading in such a limitation, instead relying largely on general statements about IBA and the preferred embodiment made during prosecution and reexamination.  None of these statements, however, qualify as a clear and unambiguous disavowal of the scope of this particular claim term, which would be required to read in the limitation that Cisco proposes.

Cisco also points to the record in the '497 case, but if anything that record supports SynQor's proposed construction.  Judge Ward explained in his Claim Construction Order that when the inventors "intended to limit the claims to an isolation stage as being 'non-regulated,'" they did so "by expressly using the term 'non-regulating.'"  (Cisco Ex. 14 at 36.)  That reasoning applies here as well—particularly since claims 27 and 28 do not include the "non-regulated" language but dependant claim 29 does.

1

I. **Legal Standards**

The "words of a claim are generally given the[] ordinary and customary meaning" that they "would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc) (citation omitted).  In addition, the claims "must be read in view of the specification, of which they are a part." *Id.* at 1315 (citation omitted).  It is improper, however, to limit the claims to specific embodiments set forth in the specification. *Id.* at 1323.

"In addition to consulting the specification," a court "should also consider the patent's prosecution history, if it is in evidence." *Id*. at 1317 (citation omitted).  However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and is thus less useful for claim construction purposes." *Id.*  Where a party alleges that the inventors limited their claims by making statements in the prosecution history, it must show that "the allegedly disclaiming statements constitute 'a clear and unmistakable surrender of subject matter.'" *Ecolab, Inc. v. FMC Corp.,* 569 F.3d 1335, 1342 (Fed. Cir. 2009) (citation omitted).

II. **The Claim Language Supports SynQor's Proposed Construction.**

    A. **SynQor's Proposed Construction Reflects the Ordinary Meaning of the Claim Language and Is Supported By the Context in Which It Is Used in the Claims.**

There is no dispute that SynQor's proposed construction reflects the ordinary meaning of the term "isolation stage."  There is nothing in the term "isolation stage" that would require the isolation stage to be non-regulating or semi-regulating, and Cisco does not contend otherwise.

The context of the term "isolation stage" in the claims also supports SynQor's proposed construction.  As the *en banc* Federal Circuit stated in *Phillips*, "the context in which a term is used in the asserted claim can be highly instructive." 415 F.3d at 1314.  For example, in *Phillips*, the Federal Circuit explained that the fact that "the claim in this case refers to 'steel baffles' … strongly implies that the term 'baffles' does not inherently mean objects made of steel." *Id.*

Here, the term "isolation stage" appears in many claims of the patents-in-suit, including independent claims 1, 20, and 27 of the '190 patent. Some of those claims, such as claims 1, 20 and 29, require a "***non-regulating*** isolation stage." The use of "non-regulating" to modify the term "isolation stage" strongly implies that the term "isolation stage" is not limited to isolation stages that are non-regulating.[1] Similarly, the fact that all of the independent apparatus claims of the '034 patent expressly require "semi-regulation" in the isolation circuitry implies that claims lacking the term "semi-regulation" do not require that the isolation circuitry be semi-regulated. *See* '034 patent, claim 1 (requiring "isolation/semi-regulation circuitry"), claim 21 (requiring "isolation/semi-regulation circuitry").

The doctrine of claim differentiation also supports SynQor's proposed construction. Claim 29 (like claim 28) depends on claim 27, and simply adds the limitation that "the isolation stage is non-regulating." This strongly indicates that "non-regulating" should not be read into the "isolation stage" of claim 27. *See InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*, 690 F.3d 1318, 1324 (Fed. Cir. 2012) ("claim differentiation is at its strongest" where "the limitation that is sought to be 'read into' an independent claim already appears in a dependent claim") (citation omitted); *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001) ("[c]laim differentiation" is "clearly applicable" where the added limitation "is the only meaningful difference between the two claims").

If the inventor had wanted to limit the term "isolation stage" in claim 28 to a "non-regulating or semi-regulating" isolation stage, he would have expressly used the terms "non-regulating" and "semi-regulating," as he did in other claims.

---

[1] The Federal Circuit has explained that the same claim term in the same or related patents should generally be given the same meaning. *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003) ("we presume, unless otherwise compelled, that the same claim term in the same patent or related patents carries the same construed meaning").

### B. Cisco's Attempt to Use the Term "Fixed Duty Cycle" To Limit the Term "Isolation Stage" Is Flawed.

Cisco argues that the "isolation stage" must be either "non-regulated" or "semi-regulated" because "the 'fixed duty cycle' limitation of claim 28 precludes a 'regulated' converter." (Cisco Br. at 4.) This argument is wrong for several reasons.

First, "fixed duty cycle" is a separate claim limitation from the "isolation stage" limitation, and should not be read into it. The Court construed "fixed duty cycle" in its *Markman* Order, and Cisco does not challenge that construction here. For the claims that include the "fixed duty cycle" limitation, an accused device must include this limitation, as construed by the Court, to literally infringe. But there is no reason to read the "fixed duty cycle" limitation into the separate "isolation stage" limitation. This is particularly true because some claims (such as claims 20-27 and 29 of the '190 patent) that include the "isolation stage" do not also include a "fixed duty cycle" limitation.

Second, Cisco is wrong that the presence of the "fixed duty cycle" limitation means that the "isolation stage" cannot perform regulation. (*See* Cisco Br. at 4-5.) To the contrary, an isolation stage can have a "fixed duty cycle" and still regulate, such as where the regulation is performed by a method other than varying the duty cycle. Indeed, the specification discusses such methods, in which regulation is performed using the controlled rectifiers on the secondary side of the isolation stage. (Ex. 1, '190 patent, Col. 13:24-14:35.) These embodiments in the specification are discussed in more detail in Section III below.

Cisco inaccurately argues that SynQor's counsel "admitted at the claim construction hearing" that "claim 28 requires a 'non-regulating isolation stage' by virtue of the term 'fixed duty cycle' in the claim." (Cisco Br. at 5.) SynQor's counsel admitted no such thing. SynQor's counsel simply explained that the Court's construction of "fixed duty cycle" would "not be redundant because it would make clear that the fixed duty cycle" in claim 28 "is imposing a specific requirement on the duty cycle that it does not control the output toward the predefined value," which is not required by the "isolation stage" limitation in that claim. (Cisco Br. Ex. 9 at

68:18-24.) This statement is fully consistent with SynQor's proposed construction because it makes clear that "fixed duty cycle" is a different limitation with a different meaning separate and apart from the "isolation stage" limitation.

Finally, Cisco cites testimony from Dr. Schlecht that in claim 28, "the duty cycle of the voltage across the primary winding is not varied to regulate the output voltage." (Cisco Br. at 5.) Dr. Schlecht was merely explaining the meaning of the "fixed duty cycle" limitation, not the "isolation stage" limitation. (*See, e.g.*, Ex. 2, 5/1/14 Schlecht Tr. at 15:3-17 (answering question regarding "the Court's construction of a fixed duty cycle").) He never said the "isolation stage" limitation was only limited to non-regulating and semi-regulating isolation stages. (*Id.* at 15:18-20 ("Q: So can claim 28 encompass a converter that regulates in the isolation stage? A: Yes, it can.").)

## III. SynQor's Proposed Construction Is Supported By the Specification.

The specification supports construing "isolation stage" in accordance with its ordinary meaning, as SynQor proposes. In fact, contrary to Cisco's suggestion, it specifically discloses embodiments covered by claim 28 which have a regulated isolation stage with a "fixed duty cycle." It therefore shows that an isolation stage can have a fixed duty cycle and yet still be regulated.

These embodiments, described in columns 13 and 14 of the '190 patent, provide regulation using the MOSFET controlled rectifiers on the secondary side, rather than by varying the duty cycle. (Ex. 1, '190 patent, Col. 13:24-14:35.) More specifically, these embodiments "provid[e] linear *regulation*" by "control[ling] how much the synchronous rectifier MOSFETs are turned on during their conduction state." (*Id.*, Col. 13:24-27 (emphasis added.)) The specification describes two approaches for carrying this out. First, the MOSFETs can be used to regulate "by adding circuitry to limit the peak voltage to which their gates will be driven so that their on-state resistances can be made larger than their minimum values." (*Id.*, Col. 13:27-30.) Second, the MOSFETs can be used to regulate "by controlling the portion of [the] operative half

5

cycle during which a MOSFET's gate voltage is allowed to be high so that the MOSFET's body diode conducts for the rest of the time." (*Id.*, Col. 13:30-33.) The specification explains that "[w]ith both techniques, the amount to which the output voltage can be ***regulated*** is the difference between the voltage drop of the synchronous rectifiers when their channels are fully on (i.e., when they are at their minimum resistance) and when only their body diodes are carrying the current." (*Id.*, Col. 13: 34-39 (emphasis added).) The specification goes on to describe these approaches in detail in column 13, line 40 through column 14, line 36 and in Figures 7 and 8. (*See also* Ex. 2, 5/1/14 Schlecht Tr. at 15:21-27:7 (explaining this).)

Because the specification discloses an "isolation stage" that performs regulation while having a fixed duty cycle, the specification provides no basis for construing the term "isolation stage" in a manner that would exclude regulation. Indeed, that would read out preferred embodiments in the specification, which is "rarely, if ever, correct." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583-84 (Fed. Cir. 1996).

## IV. There Is No Clear and Unambiguous Disavowal During Prosecution That Would Limit the Term "Isolation Stage" to Only Unregulated and Semi-Regulated Isolation Stages.

Cisco also attempts to limit the term "isolation stage" by pointing to various statements made during the prosecution and reexaminations of the patents-in-suit, which Cisco takes out of context. Where a party alleges that the inventor limited his claims by making statements in the prosecution history, it must show that "the allegedly disclaiming statements constitute 'a clear and unmistakable surrender of subject matter.'" *Ecolab*, 569 F.3d at 1342. None of the statements that Cisco points to qualify as a "clear and unmistakable surrender" that would limit the term "isolation stage" to only non-regulated and semi-regulated isolation stages.

Cisco first argues that SynQor distinguished the invention from the Mweene reference on the basis that the invention included an isolation stage "without regulation." (Cisco Br. at 6.) But that is not correct because the Mweene reference did include a non-regulating isolation stage

6

and could not have been distinguished on that basis.[2] (Cisco Br. Ex. 10C at 8.) Instead, SynQor distinguished Mweene on the basis that the claimed invention converts an input voltage level to the required voltages using a two-stage system in which the second stage converts "without further isolation," while Mweene converts a 50 volt level using single-stage "point of load converters" which, "given the high voltage level at their inputs, each would necessarily have included isolation." (*Id.*) Cisco effectively acknowledges that this statement did not disclaim all regulation in the "isolation stage," since its proposed construction allows the "isolation stage" to be "semi-regulating."

Cisco next selectively quotes the Examiner's Statement of Reasons for Allowance in the '190 patent to suggest that the Examiner allowed the claims based on the "non-regulating isolation stage" limitation. (Cisco Br. at 6-7.) But Cisco omits the rest of the listing of claim elements in the Reasons for Allowance, which makes clear that the Examiner pointed to many features as distinguishing the claims from the prior art:

> none of prior art of record taken alone or in combination shows a power converter system and a method thereof comprising a DC power source, a non-regulating isolation stage including a primary transformer winding circuit, a secondary transformer winding circuit having at least one secondary winding coupled to the primary winding and having plural controlled rectifiers each having a parallel uncontrolled rectifier and connected a [sic] secondary winding, a plurality of non-isolating regulation stages each receiving the output of the isolation stage along with specific function(s) of each of those elements as recited in the claims of the instant application.

(Cisco Br. Ex. 10D, Examiner's Statement of Reasons for Allowance at 2.)

There is no basis for concluding that each of the claims must include each and every one of these elements. In any event, it would be improper to read a limitation into the claims based

---

[2] Indeed, SynQor specifically told the PTO that "[a]s shown in Figure 1 of the Mweene paper, an isolation stage provided step down from 390V to 50V *without regulation*." (Cisco Br. Ex. 10C at 8 (emphasis added).)

on the Examiner's reasons for allowance, and the applicant has no obligation to correct misstatements in an Examiner's reasons for allowance (even if the statements had been in error). *See Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1345 (Fed. Cir. 2005) (an Examiner's reasons for allowance is not a disavowal by the applicant, and "an applicant's silence regarding statements made by the examiner during prosecution, without more, cannot amount to a 'clear and unmistakable disavowal' of claim scope") (citation omitted).

Next, Cisco points to general background statements made by SynQor during the reexaminations of the '190 patent as a basis for grafting additional limitations into claim 28. None of these statements, however, qualifies as a clear and unambiguous disavowal that would limit the term "isolation stage" to only unregulated and semi-regulated isolation stages.

For example, Cisco points to a statement by SynQor that "[t]he claims under reexamination are directed to revolutionary power converter designs for" the unregulated and semi-regulated intermediate bus architecture. (Cisco Br. at 7.) But that neither means that each claim has the exact same scope, nor that every claim is limited to unregulated and semi-regulated isolation stages. The point being made was that the novel designs have applicability to unregulated and semi-regulated IBA, which is not to say that they have no value elsewhere.

This point is reinforced by another selective quotation relied on by Cisco, where SynQor stated that the '190 claims are "generally directed" to "what is now known as 'Unregulated Intermediate Bus Architecture'" and "claims 27, 28 and 33 additionally encompass what is now known as Semi-regulated IBA." (Cisco Br. at 7; Cisco Ex. 4 at 2.) The term "encompass" simply means to include;[3] therefore, SynQor was merely saying that claims 27, 28 and 33 include unregulated and semi-regulated IBA. SynQor did not say that these claims were necessarily limited only to unregulated and semi-regulated isolation stages.

The same is true for the statement Cisco cites from the background section of a reexamination submission stating that in unregulated and semi-regulated IBA, "the isolation

---

[3] (Ex. 3, Webster's Third New Int'l Dictionary (1993) at 747 ("to bring within: include").)

stage lacks a feedback circuit that bridges the isolation barrier to drive the output voltage to a predetermined value." (Cisco Br. at 8.) This general background statement merely focused on the unregulated and semi-regulated IBA systems generally known at the time. It was in no way meant to be limiting, was not used to distinguish prior art, and in no way indicated that all the claims require the absence of feedback circuitry, as Cisco suggests.

Cisco also faults SynQor for not pointing out during the reexamination that claim 28 covers regulated IBA. But there was no reason or need to make such a categorical statement, which would be misleading and wrong in any event. The claims do not cover all regulated IBA systems, and there are many fully-regulated bus converters (*i.e.*, converters that regulate all the time by varying the duty cycle) that would not meet other requirements of claim 28.

## V. The Record in the '497 Case Does Not Support Cisco's Proposed Construction.

Cisco argues that judicial estoppel prevents SynQor from disputing Cisco's argument that the limitations "non-regulating" and "semi-regulating" must be read into the term "isolation stage" in claim 28. This is wrong for several reasons.

First, Cisco points to SynQor's claim construction arguments in the '497 case. But the portion it points to did not concern the meaning of the term "isolation stage"; it concerned the meaning of the claim term requiring a "voltage whose value drops with increasing current flow." (Cisco Br. at 9-10; Cisco Ex. 5 at 18-19.) Thus, SynQor was not arguing for a limitation on the term "isolation stage" in claim 28. Moreover, Cisco neglects to mention that Judge Ward rejected SynQor's proposed construction of that term, finding that plain meaning controls. (Cisco Ex. 14 at 36.) Thus, even as to the claim term that was argued, this record does not meet the requirements for judicial estoppel, which requires that the Court accept the argument that forms the alleged basis of the estoppel. *See In re Flugence*, 738 F.3d 126, 129 (5th Cir. 2013).

Notably, Judge Ward rejected both sides' proposed constructions of the "voltage whose value drops" limitation, finding that the defendants were attempting "to improperly equate the phrase to merely 'non-regulation.'" (Cisco Ex. 14 at 36.) According to Judge Ward, when the

inventors "intended to limit the claims to an isolation stage as being 'nonregulated,' *the claims do so by expressly using the term 'non-regulating*.'"  (*Id.* (emphasis added).)  Judge Ward also found that this phrase "has nothing to do with semi-regulation."  (*Id*.)  By attempting to limit the "isolation stage" of claim 28 to only "non-regulating" and "semi-regulating" isolation stages, even though the claim does not expressly use those terms, Cisco is doing exactly what Judge Ward found was improper.

## CONCLUSION

SynQor requests its construction be adopted by the Court.

Dated:   May 22, 2014

/s/ Bryan C. Mulder
**Thomas D. Rein** (*admitted pro hac vice*)
Lead Attorney
trein@sidley.com
**Russell E. Cass** (*admitted pro hac vice*)
rcass@sidley.com
**Stephanie P. Koh** (*admitted pro hac vice*)
skoh@sidley.com
**Bryan C. Mulder**  (*admitted pro hac vice*)
bmulder@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone:    312.853.7000
Facsimile:    312.853.7036

**Michael D. Hatcher**
Texas State Bar No. 24027067
mhatcher@sidley.com
**David T. DeZern**
Texas State Bar No. 24059677
ddezern@sidley.com
SIDLEY AUSTIN LLP
2001 Ross Avenue, Suite 3600
Dallas, TX 75201
Telephone:    214.981.3300
Facsimile:    214.981.3400

***ATTORNEYS FOR PLAINTIFF SYNQOR, INC.***

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on May 22, 2014.

/s/ Bryan C. Mulder
Bryan C. Mulder