**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| SYNQOR, INC. | |
| Plaintiff, | Civ. No. 2:14-cv-286-MHS-CMC |
| v. | **JURY TRIAL DEMANDED** |
| CISCO SYSTEMS, INC., | |
| Defendant. | |

**CISCO'S OBJECTIONS TO THE REPORT AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE (DKT. 181) REGARDING CISCO'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT NO. 3 (DKT. 97)**

## I.       Introduction

Pursuant to 28 U.S.C.A. § 636(b)(1)(C) and Local Rule CV-72(c),[1] Cisco respectfully

objects to the Report and Recommendation (Dkt. 181 ("R&R")) regarding Cisco's Motion for

Partial Summary Judgment No. 3 (Dkt. 97).  The R&R incorrectly follows the rule proposed by

the dissenting opinion in *Glenayre Electronics, Inc. v. Jackson*, 443 F.3d 851 (Fed. Cir. 2006),

rather than the majority rule that contradicts it.  Under the majority rule, when damages are paid

pursuant to a final judgment, "there can be no question that the payment represented full

compensation for the infringing use."  *Glenayre*, 443 F.3d at 872.  Therefore, the question that

the R&R would pose to the jury—"whether SynQor has previously been fully compensated for

the full scope of Cisco's alleged infringement during the particular time periods covered by the

'497/'444 damages award," R&R at 20—is a question of law already answered by the Federal

Circuit.

By not following the legal rule decided in *Glenayre*, the R&R invites relitigation of

issues already resolved, and would require this jury to interpret and determine the intentions and

beliefs of the '497 jury and the Court in its later damages orders.  As Cisco explained in its briefs

and emphasized at the hearing on its motion, as a matter of law, the judgments entered in the

prior cases compensated SynQor for all infringing sales of the Old CPNs made to Cisco during

the relevant time periods.  *See, e.g.*, Dkt. 128-1 [April 11, 2014 Reed Report] at 25 ("SynQor's

technical expert, Dr. Leeb, established at the '497 trial (and the jury agreed) that ***all*** [Cisco] end

products used the [Old CPNs] in ways that infringe SynQor's patents." (emphasis added));

---

[1]       Cisco is filing these objections under 28 U.S.C.A. § 636(b)(1)(C) and Local Rule CV-72(c) because the
Magistrate Judge issued a Report and Recommendation rather than an order.  However, if the Court deems Cisco's
objections more appropriately filed under Local Rule 72(b), Cisco will re-file these objections pursuant to the
Court's instructions.

Exhibits 1-3[2] [12/15/10 AM '497 Trial Tr. at 84 and accompanying slides] (SynQor's technical

expert testifying that "*all* of [Cisco's] known end products" infringe (emphasis added)); *see also*

Exhibit 4 [August 14, 2014 Hearing Tr.] at 28-41; 60-65.[3]

Whether the prior damages awards preclude SynQor from recovering further damages for

converters sold to Cisco during the relevant time periods is a question of law, and there can

therefore be nothing for the jury to decide.  *See Stebler v. Riverside Heights Orange Growers'*

*Ass'n*, 214 F. 550, 554 (9th Cir. 1914) ("When final judgment is entered against the defendants

pursuant to the accounting which has been ordered against them, the plaintiff will receive

thereunder full compensation for the use of the machines by the vendees of the defendants…");

*cf. Immersion Corp. v. Sony Computer Entertainment America Inc*., 239 Fed. App'x. 578 (Fed.

Cir. 2007) (nonprecedential) (alleged exclusive licensee prohibited from bringing infringement

claims because alleged infringer had already paid a money judgment for its infringement to the

patentee—"Sony has satisfied the patentee's judgment; ISLLC [the alleged licensee] cannot

pursue further recovery from Sony based on the same alleged acts of infringement of the '213

and '333 patents.").

The awards SynQor has already collected pursuant to two final judgments put this issue

to rest.  The Court should not adopt the R&R and instead should grant Cisco's motion for partial

summary judgment of patent exhaustion.

## II.    The R&R Applies An Erroneous Legal Standard.

The R&R states that whether a damages award against a manufacturer includes a paid-up

---

[2]    Unless otherwise indicated, all references to "Exhibit" refer to the exhibits to the Declaration of Dana O. Burwell in support of Cisco's Objections To The Report And Recommendation Of The United States Magistrate Judge (Dkt. 181) Regarding Cisco's Motion For Partial Summary Judgment No. 3 (Dkt. 97), filed concurrently herewith.

[3]    For the reasons stated in its briefing, Dkt. 97, 137, and at the hearing, Cisco continues to assert that the doctrine of patent exhaustion, not full compensation or implied license, governs its motion.

license for infringing operations by the manufacturer's customers is "a factual question, turning on the adequacy of the compensation." R&R at 11 (citing *Glenayre*, 443 F.3d at 876-77 (Newman, J., dissenting)). As the R&R notes, when "an express ***private release*** of past infringement which does not purport to release others is involved, the 'adequacy of the compensation must always be a question of fact.'" *Id.* (emphasis added) (quoting *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 513 (1964)). But this case does not involve a "private release"; it involves two prior judgments, which both the Supreme Court in *Aro* and the majority opinion in *Glenayre* recognize represent "full compensation." *See Glenayre*, 443 F.3d at 872 ("[T]he justices [in *Aro*] made clear that when the patentee has collected payment by a direct infringer under a judicial decree calculated as a full compensation, ***as opposed to a private release***, there can be no question that the payment represented full compensation for the infringing use." (emphasis added)); *see also Aro*, 377 U.S. at 513 ("In [*Farrand Optical Co. v. United States*, 325 F.2d 328 (2d Cir.1963)], the payment by the direct infringer was made under judicial decree, and there could thus be no question but that it represented full compensation for the infringing use.").

The R&R cites several cases that it asserts justify its application of the dissent's rule in *Glenayre*. *See* R&R at 9-13, 17. But those cases involve private agreements, not damages awards. For example, in *Asetek*, the court referred to a declaration and emails between the licensing parties that raised issues of fact regarding the scope of a license under which the accused infringer claimed the patentee had been compensated. *See Asetek Holdings, Inc. v. CoolIT Systems, Inc.*, No. C-12-4498, 2013 WL 5640905, at *1-2 (N.D. Cal. Oct. 11, 2013). In *Baychar*, the private settlement agreement in question specifically stated that the proceeds it provided amounted to "full satisfaction of all claims … arising out of claims of the Action," and

3

therefore "the release of the [manufacturers] necessarily extend by law to their joint tortfeasor customers as well." *Baychar, Inc. v. Salomon North America*, Civ. No. 04-136, 2006 WL 2061400, at *8-9 (D. Me. July 19, 2006).  And in *Semiconductor Energy Laboratory*, the court reserved for trial questions concerning the scope of the patentee's "private dealings" and what payments made under those dealings were intended to compensate.  *See Semiconductor Energy Laboratory Co. v. Chi Mei Optoelectronics Corp.*, 531 F. Supp. 2d 1084, 1116 (N.D. Cal. 2007). All of these cases required resolution regarding the intent of private agreements, and specifically whether they were intended to compensate the patentee fully or only partly; a factfinder's examination of evidence of that intent was thus necessary.[4]  But payment made under a judicial decree, rather than a private agreement, indisputably represents full compensation for the infringing use—as the *Glenayre* majority held and even the dissenting opinion confirmed.  *See* 443 F.3d at 877 (Newman, J., dissenting) (describing the majority's holding as "the payment of damages for infringing manufacture includes 'full rights' and license for ensuing uses and users 'as a matter of law'").[5]

---

[4]     The R&R's reliance on *Carborundum Co. v. Molten Metal Equipment Innovations, Inc.*, 72 F.3d 872 (Fed. Cir. 1995), is also misplaced.  There, the court noted first that "once a patentee has been fully compensated by an infringer for the use of a device embodying the patented invention, a court may not grant an injunction preventing the infringer from using or repairing that device."  *Id.* at 881.  Because the patentee had sought an injunction rather than future damages, the court held that it had not been compensated for future repair parts.  *Id*. at 881-82.  That is not what happened here.  The '444 case explicitly granted SynQor damages for bus converters sold while the injunction was stayed, and Cisco is not arguing that converters sold after the '444 damages period have been compensated.

        Similarly, in *Creative Internet Advertising Corp. v. Yahoo! Inc*., 674 F. Supp. 2d 847 (E.D. Tex. 2009), the infringing product was a software protocol generating advertising revenue from which the infringer continued to derive revenue even after it paid the patentee a royalty on revenues from an earlier time period.  *Id*. at 858.  But here, neither the manufacturers nor Cisco derives revenue from a bus converter or its subsequent use after releasing it into the stream of commerce.  *Id*. at 857 n.11, 858 (distinguishing a "tire hypothetical" where "an infringing tire is released into the stream of commerce and a judgment against the manufacturer renders the tire a licensed product," and stating that "the Court distinguishes that the license in the tire hypothetical is exhausted, but in the instant case the infringing product can continue to bring the infringer earnings long after the verdict—rendering the analogy inapposite").

[5]     *Glenayre* is not distinguishable simply because it involved a remitted damages award. *See* R&R at 12 n.3. The remitted damages award fully compensated the patentee in *Glenayre* not because it was remitted, but because it was a damages award.  The patentee might not have accepted the remitted award, but his recourse would have been

4

**III.    Adopting the R&R Would Improperly Require One Jury To Determine The Intent of Another.**

By following the dissent in *Glenayre*, rather than the binding majority opinion, the R&R would ask the jury in this case to determine what the judgment entered in the '497 case represented by determining what the jury in the '497 case thought it was resolving, and determining the meaning and effect of the Court's supplemental damages orders.  *See* R&R at 20.[6]  That bizarre result is avoided by following the Supreme Court's instruction that "there can be no question" that a prior judgment constitutes "full compensation."  *Aro*, 377 U.S. at 513; *see also Glenayre*, 443 F.3d at 872; *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544-45 (Fed. Cir. 1995) (damages awarded under 35 U.S.C. § 284 provide the patentee full compensation for the infringement suffered) (citing *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654 (1983)). By contrast, the rule proposed in the R&R would subject prior damages awards to further review and critique in successive cases that could be brought against entities further downstream in the chain of commerce (for example, customers)—an approach prohibited by principles of patent exhaustion.  *See LifeScan Scotland, Ltd. v. Shasta Techs., LLC*, 734 F.3d 1361, 1377 (Fed. Cir. 2013) ("[C]onditioning patent exhaustion on the adequacy of the patentee's reward would cast a cloud of uncertainty over every transaction and every patented product." (internal quotation marks omitted)).

---

to retry the case, resulting in a judgment that would have been full compensation.  Like the patentee in *Glenayre,* SynQor accepted its award by not appealing it.  And while SynQor has appealed the '444 damages order, that is its proper recourse in seeking further compensation—not seeking additional damages from Cisco in this case for bus converters sold during the same time periods.

[6]      For example, the R&R would require the jury to evaluate (at least) the meaning of SynQor's closing arguments in the '497 case, the verdict form in the '497 case, and written statements by the Court in its damages orders.  *See* R&R at 13-16.  Furthermore, according to SynQor, the R&R allows it to introduce evidence otherwise subject to Cisco's motions *in limine* regarding what happened in the prior cases, resulting in a litigation within a litigation.  *See* Dkt. 184 at 4, 9-12.  For precisely this reason, Cisco has moved to exclude evidence of its prior document productions and other evidence completely irrelevant to the issues in this case.

Treating the prior judgments as potentially less than full compensation is also inconsistent with the construct of the hypothetical negotiation, which "seek[s] to pin down how the prospective infringement might have been avoided via an out-of-court business solution." *LaserDynamics, Inc. v. Quanta Comp., Inc.*, 694 F.3d 51, 76 (Fed. Cir. 2012).  In each of the prior cases between SynQor and Cisco's suppliers, a hypothetical negotiation was considered to determine how SynQor would be compensated for the converters sold to Cisco during the time periods covered by the case.  As the Court explicitly noted, calculating a royalty base by using an importation rate was itself part of the hypothetical negotiation.  *See* Dkt. 97-8 ['444 Dkt. 575] at 21 ("[T]he damages base formula from *SynQor I* reflects the method that the parties would have adopted as part of their hypothetical negotiation for the temporary stay period (January 25, 2011 through April 11, 2011).").[7]  The fact that the negotiations were hypothetical and included elements of "approximation and uncertainty"—such as the importation rate—does not change the fact that, by law, the results of the negotiations fully restored SynQor to the position it would have been in had no infringing sales to Cisco occurred.  *See* Exhibit 5 [12/15/10 PM '497 Trial Tr.] at 191 (SynQor's damages expert explaining that damages are assessed according to the "but-for world" that examines "what would have happened if the Defendants had honored SynQor's patent rights"); *see also Wordtech Sys. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010) ("The hypothetical negotiation 'attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before the infringement began,' and 'necessarily involves an element of approximation and uncertainty.'" (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324-25 (Fed. Cir. 2009)).

---

[7]  The Court's supplemental damages order in the '444 case further confirms that damages were assessed on "Total Infringing Unit Sales" to which a hypothetically negotiated importation and royalty rate (or lost profits amount) were applied.  *See, e.g.*, Dkt. 97-8 at 27.

Having been fully compensated for the sales made to Cisco, SynQor cannot seek further payment from Cisco for its use of those products.  *Glenayre*, 443 F.3d at 872 (patentee cannot collect further damages when he has already "collected damages sufficient to put him in the same position he would have been in had there not been infringement"); *see also Aro*, 377 U.S. at 513 (when payment is made by judicial decree, there can be "no question but that it represented full compensation for the infringing use.").

**IV.     Conclusion**

For the foregoing reasons, Cisco respectfully objects to the R&R and requests that the Court grant Cisco's Motion for Partial Summary Judgment No. 3 (Dkt. 97).

Dated:  September 18, 2014

Douglas M. Kubehl
  douglas.kubehl@bakerbotts.com
Kurt M. Pankratz
  kurt.pankratz l@bakerbotts.com
Christa Brown-Sanford
  christa.brown-sanford@bakerbotts.com
Roshan S. Mansinghani
  roshan.mansinghani@bakerbotts.com
R. Scott McClelland
  scott.mcclelland@bakerbotts.com
**BAKER BOTTS L.L.P.**
2001 Ross Avenue, Suite 600
Dallas, Texas 75201-2980
Telephone: (214) 953-6584
Facsimile: (214) 953-4584

Michael E. Jones (SBN: 10929400)
  mikejones@potterminton.com
Allen Franklin Gardner (SBN: 24043679)
  allengardner@potterminton.com
**POTTER MINTON**
A Professional Corporation
110 N. College, Suite 500
Tyler, Texas  75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

Andrea Pacelli (admitted *pro hac vice*)
  andrea.pacelli@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

*/s/ Louis W. Tompros, with permission by
Michael E. Jones*

William F. Lee (admitted *pro hac vice*)
  william.lee@wilmerhale.com
  Lead Attorney
Louis W. Tompros (admitted *pro hac vice*)
  louis.tompros@wilmerhale.com
Richard A. Goldenberg (admitted *pro hac vice*)
  richard.goldenberg@wilmerhale.com
Rachel I. Gurvich (admitted *pro hac vice*)
  rachel.gurvich@wilmerhale.com
Andrew J. Danford (admitted *pro hac vice*)
  andrew.danford@wilmerhale.com
Kelli J. Powell (admitted *pro hac vice*)
  kelli.powell@wilmerhale.com
Dana O. Burwell (admitted *pro hac vice*)
  dana.burwell@wilmerhale.com
Allison Trzop (admitted *pro hac vice*)
  allison.trzop@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Rachel L. Weiner (admitted *pro hac vice*)
  rachel.weiner@wilmerhale.com
Jonathan Uffelman (admitted *pro hac vice*)
  jonathan.uffelman@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

**ATTORNEYS FOR
DEFENDANT CISCO SYSTEMS, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on September 18, 2014.


*/s/ Michael E. Jones*