**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| SYNQOR, INC. <br><br> Plaintiff, <br><br> v. <br><br> CISCO SYSTEMS, INC., <br><br> Defendant. | Civ. No. 2:14-cv-286-MHS-CMC <br><br> **JURY TRIAL DEMANDED** |

**CISCO SYSTEMS, INC.'S OBJECTIONS TO THE REPORT AND
RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE (DKT. 210)
REGARDING SYNQOR'S MOTION FOR SUMMARY JUDGMENT ON
DEFENDANTS' § 112 AFFIRMATIVE DEFENSES AND COUNTERCLAIMS (DKT.
104) AND CISCO'S MOTION FOR PARTIAL SUMMARY JUDGMENT NO. 4:
<u>INVALIDITY PURSUANT TO 35 U.S.C. § 112 (DKT. 103)</u>**

Pursuant to 28 U.S.C.A. § 636(b)(1)(C) and Local Rule CV-72(c),[1] Cisco respectfully objects to the Report and Recommendation (Dkt. 210 ("§ 112 R&R")) regarding SynQor, Inc.'s Motion for Summary Judgment on Defendants' § 112 Affirmative Defenses and Counterclaims (Dkt. 104) and Cisco's Motion for Partial Summary Judgment No. 4: Invalidity Pursuant to 35 U.S.C. § 112 (Dkt. 103). Specifically, Cisco objects to the Magistrate Judge's determination that the asserted apparatus claims are not indefinite.[2] Because these claims improperly claim a method of use, and, as a result, any infringement determination must look outside the structure of the accused product, the claims do not inform, with reasonable certainty, those skilled in the art about the scope of SynQor's alleged invention. The Court should not adopt the § 112 R&R and should instead conclude that the asserted apparatus claims are indefinite as a matter of law.

## I. BACKGROUND

### A. The Asserted Apparatus Claims

As the Magistrate Judge recognized, all but one of the asserted apparatus claims require either a "non-regulating" converter, or one that provides an output "without regulation." § 112 R&R at 5.[3] SynQor asserted these claims against certain Cisco products containing one of what the parties and the Magistrate Judge have referred to as the "regulated CPNs." Report and

---

[1] Cisco is filing these objections under 28 U.S.C.A. § 636(b)(1)(C) and Local Rule CV-72(c) because the Magistrate Judge issued a Report and Recommendation rather than an order. However, if the Court deems Cisco's objections more appropriately filed under Local Rule 72(b), Cisco will re-file these objections pursuant to the Court's instructions.

[2] The § 112 R&R recommends denial of both parties' motions for summary judgment with respect to Cisco's indefiniteness claims. *See* § 112 R&R at 1, 27-28. However, the parties have stipulated that, in effect, the R&R recommends rejection of Cisco's indefiniteness defenses and counterclaims as a matter of law. *See* Joint Stipulation Regarding Summary Judgment Reports and Recommendations (Dkt. 215 ("Stipulation")) at ¶¶ 3. Thus, Cisco has not opposed SynQor's Motion to Clarify the § 112 R&R. *See generally* Dkt. 216.
  In addition, as discussed below, Cisco's written description and enablement claims and defenses were predicated on SynQor's assertion that its claims to certain non-regulated power converters encompassed certain regulated Cisco products—a claim which the Magistrate Judge recommended rejecting, *see* Report and Recommendation of the United States Magistrate Judge Regarding Motion for Partial Summary Judgment No. 1 (Dkt. 208) at 1, 22 and which SynQor has now abandoned, *see* Stipulation at ¶ 1a.

[3] The remaining claim, claim 28 of the '190 patent, requires an isolation stage with a converter having a "fixed duty cycle," which the Court has held (over Cisco's objection) does not limit the claims to a "unregulated" or "semi-regulated" isolation stage. *See* Dkt. Nos. 111, 162. Nevertheless, the Magistrate Judge correctly recognized that "the rationale discussed [in its Noninfringement R&R] with regard to 'non-regulating' and 'without regulation' is equally applicable to 'fixed duty cycle.'" Noninfringement R&R at 19. *See also id.* at 20 & n. 4 (suggesting that infringement inquiry requires analysis of whether output is "controlled" or "not controlled" when in use); *id.* at 15.

Recommendation of the United States Magistrate Judge Regarding Motion for Partial Summary Judgment No. 1 (Dkt. 208) ("Noninfringement R&R") at 1 n.1. The regulated CPNs have a power converter that (undisputedly) regulates its output over at least a portion of the converter's normal operating range. § 112 R&R at 6; *see also* Noninfringement R&R at 12. SynQor nonetheless argued that these regulated products met the "non-regulating limitations" because they were "capable of" producing or "designed and configured" to produce non-regulated outputs. *See, e.g.*, Noninfringement R&R at 15-17 (describing and rejecting SynQor's "mere capability" argument); *id.* at 3, 9 (describing SynQor's "designed and configured" argument).

### B. The Report and Recommendation on Non-Infringement

The Noninfringement R&R correctly rejected SynQor's argument that a product which is merely capable of operating in a "non-regulating mode" infringes the asserted non-regulating claims. *Id.* at 15-17. Because none of the claims require mere capability, the Magistrate Judge concluded that "particular features [must] actually be present in the accused systems" to support a determination of infringement. *Id.* at 15-16. For the relevant "feature" to "actually be present," the accused product must actually operate in a "non-regulating mode" or a "regulating mode," *id.* at 17-19; in other words, the question is whether an accused system "operates only in a non-regulating manner or whether such systems operate in a manner that regulates at times and does not regulate at other times." *Id.* at 21 n.5. Thus, the Noninfringement R&R—like SynQor's infringement allegations—requires an analysis of the characteristics of an accused system in operation.[4]

---

[4] In adopting this infringement analysis, the Magistrate Judge also rejected Cisco's structural argument that the regulated CPNs cannot infringe because they have a feedback loop (which is the circuitry in the converter that performs regulation, and the removal of which SynQor has repeatedly touted as the crux of its invention of *nonregulating* intermediate bus architecture, *see* Dkt. 102 at 9-11). Cisco is contemporaneously filing objections to this aspect of the Noninfringement R&R.

The accused regulated CPNs can be used in connection with a high voltage chassis (for example, when connected to a front-end power source that sends 50V of DC power into the system) or a lower voltage chassis (for example, when connected to a front-end power source that feeds 42V of power into the system). Noninfringement R&R at 8; *see also* Dkt. 102 at 5-6 (and exhibits cited therein). Because SynQor did not dispute that a regulated CPN—when paired with a 50V DC power source—never produced an unregulated output, the Magistrate Judge recommended a holding that the accused systems in which the isolation stage converter receives a 50V input cannot infringe as a matter of law. Noninfringement R&R at 17-18. However, the Magistrate Judge also recommended that, "[a]s to power converter systems in which the identified DC power source is one that results in the system operating in the 'non-regulating mode,' [i.e., systems with a 42-V input], a factual dispute may exist." *Id.* at 18. The Magistrate Judge concluded that, with respect to power converters used with a 42V chassis, "the evidence, when viewed in the light most favorable to SynQor, creates a material question of fact regarding whether the power converters may be operating *only* within the 'non-regulating mode' as defined by SynQor such that the converters may be characterized as being in a 'non-regulating' mode." *Id.* Thus, the Noninfringement R&R concluded that, to prove infringement of the apparatus claims, SynQor would have had to prove that a regulated CPN were actually used in an accused Cisco system with an input voltage that only ever produced an "unregulated" output. SynQor cannot make such a showing, and it has agreed to stipulate to non-infringement by the New CPNs to the extent that this Court adopts the Noninfringement R&R in its entirety. *See* Stipulation at ¶ 1a.

      **C.**    **The Report and Recommendation on Indefiniteness**

In its Motion for Summary Judgment regarding indefiniteness, Cisco asserted that SynQor's apparatus claims were indefinite because, while they purported to encompass structures only, the infringement inquiry depended on the customer's method of use of the

converters and/or the intent of the designer. Thus, because it is impossible to tell whether an isolation stage, standing alone, would satisfy the "non-regulating" claim limitations, the claims are indefinite. *See generally* Dkt. 103 at 11-14; *see also id.* at 2-3 and § 112 R&R at 6-7 (setting forth SynQor's experts and lead inventor's admissions supporting these arguments). Similarly, Cisco's opposition to SynQor's cross-motion on indefiniteness addressed SynQor's arguments that its apparatus claims were drawn only to capability. *See* Dkt. 126 at 11-13. Further, Cisco explained why a limitation in an apparatus claim purporting to capture a method of use rendered the claim invalid, and distinguished the '497 court's ruling on the "transformer that is not driven into saturation" language on which both SynQor and the R&R relied. *Id.* at 13.

The Magistrate Judge found that the "claims at issue use permissible functional language," requiring that the "accused products be designed and configured to produce a 'non-regulated' output or operate with a 'fixed duty cycle' **when they are put in use**." § 112 R&R at 24-25. But nonetheless, the Magistrate concluded that "infringement depends ***on the structure of the accused system***, as opposed to the intent of the designer." *Id.* at 25. Ultimately, the R&R concluded that the non-regulating limitations "recite an apparatus that is configured to perform functions not method steps that are performed by the claimed power converter systems, and thus [are] not indefinite under" *IPXL*. *Id.* The Magistrate Judge found that a skilled artisan could determine whether an isolation stage was "non-regulating" by testing it in the claimed system, and therefore that the claims informed with reasonable certainty those skilled in the art about the scope of the invention (satisfying the *Nautilus* standard). *Id.* at 26.

## II.     THE ASSERTED APPARATUS CLAIMS ARE INDEFINITE.

In *IPXL Holdings*, *L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2007), the Federal Circuit held that a claim that covered both an apparatus and a method of use of that apparatus was invalid as indefinite because a manufacturer or seller of the claimed apparatus

4

"would not know from the claim whether it might also be liable for contributory infringement because a buyer or user of the apparatus later performs the claimed method of using the apparatus." *Id.* at 1384. A claim to an apparatus (*i.e.*, a structure) that also includes limitations based on the *use* of that apparatus (*i.e.*, limitations that require that structure to *perform a certain function* or *in a certain way*), is therefore "not sufficiently precise to provide competitors with an accurate determination of the 'metes and bounds' of protection involved." *Id.* (internal quotations omitted). The touchstone for any indefiniteness claim—even ones brought pursuant to *IPXL*—is whether the claim "inform[s] those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).

In light of the Noninfringement R&R's rejection of Cisco's structural argument that the presence of a feedback loop precludes infringement, *see supra* n.4, SynQor's asserted apparatus claims fail to so inform those skilled in the art. By SynQor's technical expert's own admission, it would be impossible to assess infringement of an accused product without understanding "what [its] intended use was, of course"—which requires review of testing, schematics, datasheets, and "deposition testimony." Dkt. 103-14 at 234:15-235:19, 242:7-243:5. SynQor's expert also conceded that he would be unable to determine whether an isolation stage, standing alone, satisfied the "non-regulating" limitations; rather he "had to *understand that apparatus* somehow," because "the physical structure of the apparatus has been . . . designed and configured with the -- with the assumption . . . for where it will be going *in the hypothetical method using it*." Dkt. 103-15 at 591:2-592:8. Similarly, SynQor CEO Dr. Martin Schlecht— the named inventor of the patents-in-suit—confirmed that, in order to determine whether a converter satisfied the "non-regulating" limitations, he would need to examine the customer's

5

intended method of use, or how the customer *actually used* the apparatus over the intended range of the input voltage. *See* Dkt. 103-13 at 179:13-180:21; Dkt. 103-25 at 68:20-24, 137:8-15.

The use-based infringement analysis that SynQor's own expert and inventor admitted is necessary is precisely what the "mixed method and apparatus" indefiniteness rule of the *IPXL* line of cases seeks to avoid. A manufacturer (like Cisco) "would not know from the claim whether it might also be liable for contributory infringement because a buyer or user of the apparatus later performs the claimed method of using the apparatus." 430 F.3d at 1384; *see also Ultimate Pointer, L.L.C. v. Nintendo Co.*, Co. 6:11-CV-496 -571, 2013 WL 2325118, at *23 (E.D. Tex. May 28, 2013) (granting summary judgment of indefiniteness because "[t]he claim is not definite as to whether the claim is infringed when the pointing-device apparatus is made or sold, or when a user actually uses it to direct a pointing line"). The § 112 R&R was therefore incorrect in concluding that the asserted apparatus claims are not indefinite.

The § 112 R&R correctly cites *L.C. Eldridge* for the proposition that "for a limitation to introduce a method step, the limitation must require action, or 'actual use' of something instead of merely requiring or setting forth a particular capability." *L.C. Eldridge Sales Co., Ltd. v. Azen Mfg. PTE., Ltd.*, No. 6:11-cv-599-MHS, 2013 WL 2285749, at *2 (E.D. Tex. May 23, 2013). But this is precisely what the asserted apparatus claims require—as the Noninfringement R&R itself explained: "the claims require that particular features *actually be present in the accused system—and not merely capable of being present*." Noninfringement R&R at 16; *see also id.* at 15 ("SynQor has not identified language in the claims or the claim constructions that merely require capability."). In fact, SynQor repeatedly asserted in its indefiniteness filings that the limitations in question required that the accused products be "designed and configured such that they are *capable of producing* . . . a 'non-regulated output'"; describing the claims as covering

6

an apparatus "'*capable of* performing the recited functions,' not method steps that are performed by the claimed power converter system." Dkt. 104 at 11. SynQor posited that "'an accused device need only be capable of operating' in the described mode." *Id*. (quoting *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010)). The Magistrate Judge expressly—and correctly—rejected that argument in the Noninfringement R&R.[5] The § 112 R&R's error, however, was the failure to apply that conclusion—that the claims do *not* recite mere capability—when evaluating indefiniteness. *See H-W Tech., LC v. Overstock.com, Inc.*, 973 F. Supp. 2d 689, 696 (N.D. Tex. 2013), *aff'd*, 758 F.3d 1329 (Fed. Cir. 2014) (courts considering applicability of *IPXL* must "focus on whether the claim language is directed to user actions rather than system capabilities").

Rather, pursuant to the Noninfringement R&R, SynQor would have to prove that the regulated CPNs were *actually used* in an accused Cisco system with an input voltage that only ever produced an "unregulated" output. Thus, in order to demonstrate infringement of the asserted apparatus claims, an analysis of the actual use of the system would be required. Such mixed method and apparatus claims are indefinite. *See IPXL*, 430 F.3d at 1384.

Moreover, even claims using functional language to define structure are, under appropriate circumstances, susceptible to indefiniteness challenge when the language is unclear: "[n]otwithstanding these permissible instances, the use of functional language in a claim may fail to provide a clear-cut indication of the scope of the subject matter embraced by the claim and thus can be indefinite." *Microprocessor Enhancement Corp. v. Texas Instr., Inc.*, 520 F.3d 1367, 1375 (Fed. Cir. 2008) (internal quotations omitted). That is the case here. Notwithstanding the

---

[5] *See also Ball Aerosol and Specialty Container, Inc. v. Limited Brands, Inc.*, 555 F.3d 984, 994-95 (Fed. Cir. 2009) (patentee's "reliance on cases that found infringement by accused products that were reasonably capable of operating in an infringing manner is misplaced, since that line of cases is relevant only to claim language that specifies that the claim is drawn to capability.")

§ 112 R&R's determination that "infringement depends on the structure of the accused system," the inquiry articulated by the Magistrate Judge requires an analysis that goes beyond that structure and turns on certain steps performed during normal operation. This determination, together with the Noninfringement R&R's recommendation that the presence of a feedback loop structural element is insufficient to determine infringement, renders the claims indefinite.

### III. THE NONINFRINGEMENT R&R, IF ADOPTED, RESOLVES THE WRITTEN DESCRIPTION AND ENABLEMENT ASPECTS OF CISCO'S MOTION.

The § 112 R&R also recommended denying both (1) Cisco's motion for summary judgment that certain asserted claims lack written description, and (2) SynQor's cross-motion for summary judgment on Cisco's written description and enablement claims. *Id.* at 22-26. The Magistrate Judge found triable issues of material fact with respect to both written description and enablement. *Id.* As the Magistrate Judge and all parties acknowledge, Cisco's written description and enablement claims were contingent: they were predicated on SynQor's assertion that its claims to certain non-regulated power converters read on certain regulated Cisco products, *id.* at 3-4, 13-14, which the Noninfringement R&R rejected. *See* Dkt. 208. The parties have stipulated that if this Court adopts the Noninfringement R&R in its entirety, SynQor will drop its infringement allegations against Cisco's regulated products, and Cisco will not assert any written description or enablement defenses or counterclaims. Stipulation at ¶¶ 1a, 1c. Accordingly, these Objections do not challenge the recommendation with respect to written description. However, in the event that this Court modifies the Noninfringement R&R, Cisco reserves the right to challenge the denial of its motion with respect to written description, and to re-assert its written description and enablement defenses. *See also* Stipulation at ¶ 2.

Dated: December 12, 2014

By: /s/ *Louis W. Tompros, with permission by Michael E. Jones*

Douglas M. Kubehl
  douglas.kubehl@bakerbotts.com
Kurt M. Pankratz
  kurt.pankratz@bakerbotts.com
Christa Brown-Sanford
  christa.brown-sanford@bakerbotts.com
Roshan S. Mansinghani
  roshan.mansinghani@bakerbotts.com
R. Scott McClelland
  scott.mcclelland@bakerbotts.com
**BAKER BOTTS L.L.P.**
2001 Ross Avenue, Suite 600
Dallas, Texas 75201-2980
Telephone: (214) 953-6584
Facsimile: (214) 953-4584

Michael E. Jones (SBN: 10929400)
  mikejones@potterminton.com
Allen Franklin Gardner (SBN: 24043679)
  allengardner@potterminton.com
**POTTER MINTON**
A Professional Corporation
110 N. College, Suite 500
Tyler, Texas 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

Andrea Pacelli (admitted *pro hac vice*)
  andrea.pacelli@wilmerhale.com
**WILMER CUTLER PICKERING**
 **HALE AND DORR LLP**
7 World Trade Center
250 Greenwich Street
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

William F. Lee (admitted *pro hac vice*)
  william.lee@wilmerhale.com
Louis W. Tompros (admitted *pro hac vice*)
  louis.tompros@wilmerhale.com
Richard A. Goldenberg (admitted *pro hac vice*)
  richard.goldenberg@wilmerhale.com
Rachel I. Gurvich (admitted *pro hac vice*)
  rachel.gurvich@wilmerhale.com
Andrew J. Danford (admitted *pro hac vice*)
  andrew.danford@wilmerhale.com
Kelli J. Powell (admitted *pro hac vice*)
  kelli.powell@wilmerhale.com
Dana O. Burwell (admitted *pro hac vice*)
  dana.burwell@wilmerhale.com
Allison Trzop (*admitted pro hac vice*)
  allison.trzop@wilmerhale.com
**WILMER CUTLER PICKERING**
 **HALE AND DORR LLP**
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Rachel Weiner Cohen (admitted *pro hac vice*)
  rachel.cohen@wilmerhale.com
Jonathan Uffelman (admitted *pro hac vice*)
  jonathan.uffelman@wilmerhale.com
**WILMER CUTLER PICKERING**
 **HALE AND DORR LLP**
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

**ATTORNEYS FOR
DEFENDANT CISCO SYSTEMS, INC.**

## **CERTIFICATE OF SERVICE**

   The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on December 12, 2014.

                    */s/ Michael E. Jones*