**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| SYNQOR, INC. | |
| Plaintiff, | Civ. No. 2:14-CV-286-RWS-CMC |
| v. | **JURY TRIAL DEMANDED** |
| CISCO SYSTEMS, INC. | |
| Defendant. | |

### SYNQOR, INC.'S SUR-REPLY TO CISCO'S OBJECTIONS TO REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE REGARDING CISCO'S MOTION FOR PARTIAL SUMMARY JUDGMENT NO. 1: NONINFRINGEMENT BY PRODUCTS INCORPORATING NEW CPNS

I.      **INTRODUCTION**

Cisco originally objected to the New CPN R&R on two grounds: 1) that the claims should be construed to preclude converters having a feedback loop based on purported admissions by SynQor (Dkt. 219 at 1-3), and 2) that SynQor is purportedly judicially estopped from asserting that converters having a feedback loop infringe (Dkt. 219 at 3-6).  In its Reply, Cisco abandons the first argument, now asserting that "claim construction ... has nothing to do with Cisco's Objections."  Dkt. 234 at 2.  The reason for Cisco's retreat is readily apparent—none of the statements at issue constitute a clear and unmistakable disclaimer of converters that include a feedback loop.  Rather, as SynQor pointed out in its Opposition, the statements Cisco cites are taken out of context and do not constitute a disclaimer.  Dkt. 231 at 2-4; *see also* Dkt. 111 at 10 (rejecting Cisco's similar arguments during supplemental claim construction of claim 28 of the '190 patent).

Cisco's judicial estoppel argument fails for the same reason as its claim construction argument.  Just as none of the statements relied upon by Cisco constitute a clear and unmistakable disclaimer of converters that include a feedback loop, the statements also are not "plainly inconsistent" with SynQor's position that converters with a feedback loop can fall within the scope of the claims.  Cisco's argument to the contrary relies on a mischaracterization of SynQor's prior statements and the rulings previously made by the courts and the Patent Office.  Additionally, Cisco fails to show that any tribunal has relied on an alleged inconsistent position regarding feedback loops, an independent reason for rejecting Cisco's objections.

II.     **CISCO FAILS TO IDENTIFY ANY STATEMENT THAT WOULD LEAD TO JUDICIAL ESTOPPEL.**

Remarkably, Cisco asserts that "[t]here is no dispute that SynQor took the position that its invention required the absence of a feedback loop" and that "SynQor does not dispute that its prior positions on infringement and commercial success are plainly inconsistent with its current position."  Dkt. 234 at 2.  This, of course, is very much disputed.  SynQor explained in its Opposition why each of the statements relied upon by Cisco are taken out of context and are not inconsistent with SynQor's positions in this litigation.  Dkt. 231 at  2-5.  Cisco has no response

other than to repeat its out-of-context quotations.  Dkt. 234 at 1-2.

What is more, Cisco tacitly concedes that "[n]one of the statements Cisco relies upon are a 'clear and unmistakable surrender of subject matter'" (Dkt. 208 at 11) by withdrawing its objection to that portion of the New CPN R&R.  A statement that does not clearly and unmistakably surrender converters with a feedback loop from the scope of the claims also cannot be plainly inconsistent with the position that converters with a feedback loop can infringe.

Moreover, as Cisco acknowledges, judicial estoppel requires not just that "[t]he party against whom it is sought has asserted a legal position that is plainly inconsistent with a prior position," but also that "a court accepted the prior position."  *In re Flugence*, 738 F.3d 126, 129 (5th Cir. 2013).  Cisco is unable to identify any prior court or administrative decision holding that the claims require the absence of a feedback loop, much less a SynQor position which led to such a decision.  Instead, Cisco relies on a tortured, multi-step chain of reasoning.  It argues that SynQor's position is that a nexus exists between the benefits of removing a feedback loop and the claims, which supports the Federal Circuit's and the Patent Office's conclusions that the claims are non-obvious, and that this position implicitly means that the absence of a feedback loop is a required feature of the claims.  Dkt. 231 at 2-3.  Cisco's argument is legally and factually flawed.

First, there is nothing inconsistent (much less plainly inconsistent) in SynQor's positions.  SynQor *continues* to assert, just as it did previously, that the ability to remove a feedback loop contributes to one of the (many) benefits of using the claimed inventions.  For instance, in contrast with prior art fully regulated power architectures, certain of SynQor's asserted claims call for a non-regulating isolation stage, which allows for (but does not require) the removal of the feedback loop, and removing the feedback loop is one way in which the power density (one of the benefits of the clamed inventions) can be increased.  This feature was not "known in the prior art," unlike in the *Ormco* case cited by Cisco.  Dkt. 234 at 4 (quoting *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1312 (Fed. Cir. 2006)).  Prior art fully regulated power architectures *required* a feedback loop.  Allowing for the removal of the feedback loop therefore contributes to

a benefit of the claimed inventions (improved power density) as compared to the prior art. The fact that SynQor has consistently held this same position reinforces that judicial estoppel is inappropriate; SynQor has never reversed its position.

Second, Cisco is wrong when it suggests that SynQor effectively conceded that the claims *require* the removal of the feedback loop by taking the position that avoiding a feedback loop is a potential benefit of the claimed inventions.[1] Dkt. 234 at 3-4. Cisco cites nothing to support this proposition, and it is illogical and wrong. The removal of the feedback loop is not required to practice the claims, and every embodiment of the claims does not have to be equally commercially successful or take advantage of every potential benefit of the claimed inventions. Consistent with these principles, a patentee is not required "to submit commercial success evidence from multiple embodiments for that evidence to be commensurate in scope" with the claims. *In re Glatt Air Techniques, Inc.*, 630 F.3d 1026, 1030 (Fed. Cir. 2011). Rather, "[c]ommercial success evidence should be considered 'so long as what was sold was within the scope of the claims.'" *Id.* (quoting *In re DBC*, 545 F.3d 1373, 1384 (Fed. Cir. 2008)). The highly successful products at issue in the '497 case, which were used to support the non-obviousness of the claims in the '497 case, the appeal of the '497 case and in the PTO reexamination proceedings, were all within the scope of the claims; they all infringed. *See SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1377 (Fed. Cir. 2013). Cisco's argument that *only* the products at issue in the '497 case can now infringe has no legal support.

In this case, Cisco has added an additional unclaimed feature to certain of the accused products—a feedback loop that regulates only some of the time. The decision of Cisco and its suppliers to add unnecessary circuitry and give up a portion of one of the benefits of the claimed inventions does not mean there is no infringement. An absence of feedback circuitry is not a claim limitation, as the New CPN R&R properly found.

---

[1] For example, Cisco contends that if "SynQor said that commercial success flowed from the absence of a feedback loop *at all*," then this must be a feature of the claims. Dkt. 234 at 4 (emphasis in original). But Cisco cites nothing to support this misguided proposition.

Nor does Cisco demonstrate that a court or the jury "accepted" the supposed position that the claims require the absence of a feedback loop.  Dkt. 234 at 4.  Under Cisco's view, all that would be necessary to avoid infringement would be to add unnecessary feedback circuitry that the converter does not use, or only uses minimally, while still taking advantage of the efficiency and power density benefits of the claimed inventions.  Yet, SynQor presented evidence in the '497 case that there was no acceptable non-infringing alternative to the claimed inventions, and the jury agreed with SynQor when it awarded lost profits, as Judge Ward recognized.  *See SynQor, Inc. v. Artesyn Techs., Inc.*, No. 2:07-cv-497, 2011 WL 238645, *8 (Jan. 24, 2011).  There is no basis for Cisco's suggestion that the jury or Court accepted the proposition that the presence of a feedback loop creates a non-infringing alternative.

## III.    CONCLUSION

For all of the foregoing reasons, SynQor respectfully requests that the Court overrule Cisco's objections arguing that judicial estoppel should apply.

Dated:   January 30, 2015                                         */s/ Bryan C. Mulder*

**Thomas D. Rein** (*admitted pro hac vice*)
Lead Attorney
trein@sidley.com
**Russell E. Cass** (*admitted pro hac vice*)
rcass@sidley.com
**Stephanie P. Koh** (*admitted pro hac vice*)
skoh@sidley.com
**Bryan C. Mulder**  (*admitted pro hac vice*)
bmulder@sidley.com
**Nathaniel C. Love** (*admitted pro hac vice*)
nlove@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone:    312.853.7000
Facsimile:    312.853.7036

**Michael D. Hatcher**
Texas State Bar No. 24027067
mhatcher@sidley.com

**David T. DeZern**
Texas State Bar No. 24059677
ddezern@sidley.com
SIDLEY AUSTIN LLP
2001 Ross Avenue, Suite 3600
Dallas, TX 75201
Telephone:     214.981.3300
Facsimile:      214.981.3400

*ATTORNEYS FOR PLAINTIFF SYNQOR, INC.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing is being served on counsel of record via the

Court's CM/ECF system on January 30, 2015.

*/s/ Bryan C. Mulder*
Bryan C. Mulder