**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| SynQor, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Cisco Systems, Inc., <br><br> Defendant. | Civil Action No. 2:14-CV-286-RWS-CMC <br><br> **JURY TRIAL** |

**CISCO'S SUR-REPLY IN OPPOSITION TO SYNQOR'S MOTION FOR A
SEPARATE BENCH TRIAL ON CISCO'S EQUITABLE AFFIRMATIVE DEFENSES**

## I.     INTRODUCTION

SynQor's reply confirms that there is no basis for bifurcating the parties' legal claims from Cisco's equitable defenses pursuant to Rule 42(b).  SynQor concedes that some of the evidence bearing on Cisco's equitable defenses is also relevant to the parties' legal claims and defenses.  And SynQor has articulated no principled—let alone administrable—distinction between the evidence that it agrees that the jury should hear and the evidence that it wishes to keep from the jury.  Given the evidentiary overlap, a single trial that addresses all issues is the most efficient course.  SynQor's motion to bifurcate should be denied.

## II.    ARGUMENT

### A.     **SynQor Bears The Burden To Show That Bifurcation Is Appropriate.**

SynQor's reply rests on the false premise that bifurcation is the norm.  Dkt. 267 at 1.  But the only "common" practice is a presumption ***against*** bifurcation.  *See, e.g.*, *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 304 (5th Cir. 1993) ("Separation of issues, however, is not the usual course that should be followed.").  SynQor bears the burden to overcome that presumption.  *Chartis Specialty Ins. Co. v. Tesoro Corp.*, 930 F. Supp. 2d 653, 662 (W.D. Tex. 2013) ("[T]he burden is on the party seeking separate trials to prove that separation is necessary." (quoting *Compton Greaves, Ltd. v. Shippers Stevedoring Co.*, 776 F. Supp. 2d 375, 402 (S.D. Tex. 2011))).  SynQor's arguments fall well short of carrying its burden.

The only authority that SynQor cites (in a footnote) seeking to establish a supposedly "common" practice of bifurcation is this Court's recent decision in *NobelBiz, Inc. v. Global Connect, L.L.C.*, No. 6:12-cv-244 (E.D. Tex. July 16, 2015).  *See* Dkt. 267 at 1 n.1.  But in that case, the Court addressed two equitable defenses that were readily severable from the legal issues in the case—an inequitable conduct defense based on the failure to disclose prior art to the Patent Office and an unclean hands defense based on alleged ethical violations by plaintiff and

1

its counsel. *See* Dkt. 267-1 at 8-11.  By contrast, the facts underlying Cisco's equitable defenses are closely intertwined with the legal issues in this case.  For example, what Dr. Schlecht told (or failed to tell) Cisco in order to convince Cisco to adopt the accused unregulated bus converters in the first place is relevant to Cisco's equitable estoppel defense.  And those same facts are also relevant to SynQor's allegation of willful infringement through Cisco's use of the same technology.  Bifurcation therefore would be inappropriate.  *Precision Shooting Equip., Inc. v. Golden Eagle Indus., LLC*, No. 8:00-cv-450, 2005 WL 1669120, at *2 (M.D. Fla. July 8, 2005) ("Judicial economy would not result from the proposed bifurcation because of the overlapping evidence and testimony that will be heard in both the [equitable and legal] defenses questioning the enforceability and validity of the patent.").

        **B.**    **There Is Significant Evidentiary Overlap Between The Parties' Legal Claims And Cisco's Equitable Defenses.**

           **1.**    **Dr. Schlecht's credibility**

SynQor does not dispute that Cisco is "entitled to attempt to impeach Dr. Schlecht on matters that are material to the merits of the case."  *See* Dkt. 267 at 2 n.2.  Yet SynQor's proposed bifurcation seeks to limit Cisco's ability to attack Dr. Schlecht's credibility with matters at the core of this case.

For example, SynQor contends that Dr. Schlecht's statements to MIT concerning his alleged inventions are irrelevant because "[t]o understand the scope of the inventions, the jury must consider the claims as construed by the Court, not statements made to MIT."  Dkt. 267 at 1.  SynQor, however, has disclosed that it intends for Dr. Schlecht to testify concerning "SynQor's patents, including the inventions described and claimed therein."  Dkt. 169-1 at 3 (SynQor's Identification of Trial Witnesses).  If SynQor intends for Dr. Schlecht to testify concerning his inventions, Cisco is entitled to confront Dr. Schlecht with statements he previously made

concerning his alleged inventions. Contrary to SynQor's assertion, such evidence is not impeachment on "collateral matters." Dkt. 267 at 2. It is the very subject matter for which SynQor has disclosed Dr. Schlecht to testify.

Moreover, SynQor's argument that Dr. Schlecht's statements to MIT in 1998 are irrelevant because they were made "many years before SynQor filed the patent applications that matured into the patents in suit" is mystifying. All of the patents-in-suit claim priority to the patent application filed in 1998 that Dr. Schlecht addressed in his statements to MIT. *See, e.g.*, Dkt. 2, Ex. A ('190 patent), Ex. B ('021 patent), Ex. C ('034 patent), Ex. D ('083 patent), Ex. E ('702 patent), Ex. F ('290 patent). What Dr. Schlecht said to MIT about his patent application is certainly relevant in a later lawsuit involving patents that claim priority to it.

### 2. SynQor's delay in filing suit

SynQor attempts to downplay the significance of its delay in filing suit against Cisco by labeling it a "distracting side show." Dkt. 267 at 2. But SynQor's delay is relevant to Cisco's subjective state of mind, which SynQor has put at issue through its assertion of willful infringement. SynQor does not mention the issue of willfulness once in its reply, let alone explain how it expects the jury to decide willfulness without a complete record bearing on Cisco's subjective state of mind. The fact that the same evidence is also relevant to Cisco's equitable defenses of waiver, laches, and equitable estoppel is no basis for keeping that evidence from the jury. On the contrary, the evidentiary overlap between Cisco's legal and equitable defenses is a reason to try them together.

Nor is SynQor correct that its delay in bringing suit against Vicor is irrelevant to its case against Cisco. Dkt. 267 at 3. SynQor asserts that Cisco suffered no prejudicial delay because it sued Vicor in the same year that Cisco began using Vicor's parts. *Id.* But the fact that SynQor waited years—and publicly declared suit against "an entire industry" (Dkt. 266-9 at 24:16-20)—

3

without accusing Vicor of infringement is precisely why Cisco began using Vicor's parts in 2011. SynQor cannot ask a jury to decide that Cisco's use of Vicor's parts constitutes willful infringement without allowing Cisco to explain the circumstances under which it began using Vicor's parts, including SynQor's years of delay in bringing suit. That same evidence of delay is also relevant to Cisco's equitable defenses and further supports addressing all of these issues together in a single trial.

### 3. SynQor's assertion of infringement by the New CPNs

SynQor agrees that the jury should be permitted to hear evidence concerning Cisco's New CPNs, but wishes to keep the jury from learning how the New CPNs work or that SynQor accused the New CPNs of infringement. Dkt. 267 at 3. But those facts are relevant to the jury's consideration of the parties' legal claims and defenses. For example, the fact that SynQor previously accused the New CPNs of infringement bears directly on the supposed benefits of SynQor's claimed invention for purposes of assessing secondary considerations, reasonable royalties, and the acceptability of non-infringing alternatives, since SynQor apparently believed that the same benefits of its claimed invention were enjoyed by the New CPNs. And the operation of Cisco's New CPNs is relevant to the jury's understanding of the scope of SynQor's patents because understanding what is not covered by SynQor's patents is just as important as knowing what is—particularly where the jury will be asked to assess the value of SynQor's alleged invention against alternatives when assessing reasonable royalties. SynQor contends that it will be prejudiced by needing to explain why it accused the New CPNs of infringement (Dkt. 267 at 3-4), but that would not be cured by severance because the fact that SynQor accused the New CPNs of infringement is relevant to Cisco's legal defenses too. Again, the evidentiary overlap between Cisco's legal and equitable defenses weighs heavily against bifurcation.

### 4. The prosecution histories

SynQor does not dispute that the jury should be presented with evidence from the prosecution histories of the patents-in-suit. SynQor simply contends that the jury should not be permitted to rely on the prosecution history to alter "the scope of the claimed invention." Dkt. 267 at 4. But SynQor's own statements in the prosecution histories concerning the merits of its alleged invention are relevant to the jury's assessment of secondary considerations and damages, and the jury can consider that evidence without varying the court's claim constructions.[1] The fact that those same statements in the prosecution histories are also relevant to Cisco's equitable defenses again confirms that bifurcation is inappropriate.

### C. SynQor Does Not Address The Inefficiencies Of Bifurcation.

SynQor's reply does not address the inefficiencies of trying the parties' legal claims separately from Cisco's equitable defenses. But bifurcation undeniably would require more time from the parties, witnesses, and the court as many of the same witnesses who testified before the jury would need to be recalled for a separate bench trial on equitable defenses. Moreover, SynQor has provided no explanation for how the court and the parties could manage the division of evidence between separate jury and bench trials. Ultimately, bifurcation would simply introduce more complication without serving any of the goals set forth in Rule 42(b).

## III. CONCLUSION

The Court should deny SynQor's motion to bifurcate Cisco's equitable defenses.

---

[1] SynQor contends that the jury should not hear SynQor's statements from the file histories from certain other SynQor patents, which are not asserted in this case. Dkt. 267 at 4 n.5. But to the extent that SynQor made statements during the prosecution of those patents describing the merits of the patents-in-suit, those statements are party admissions relevant to the issues of secondary considerations and damages.

5

| | |
|---|---|
| Dated: August 3, 2015 | Respectfully submitted,<br><br>*/s/ Louis W. Tompros, with permission by Michael E. Jones* |

Douglas M. Kubehl
  douglas.kubehl@bakerbotts.com
Kurt M. Pankratz
  kurt.pankratz l@bakerbotts.com
Christa Brown-Sanford
  christa.brown-sanford@bakerbotts.com
Roshan S. Mansinghani
  roshan.mansinghani@bakerbotts.com
R. Scott McClelland
  scott.mcclelland@bakerbotts.com
**BAKER BOTTS L.L.P.**
2001 Ross Avenue, Suite 600
Dallas, Texas 75201-2980
Telephone: (214) 953-6584
Facsimile: (214) 953-4584

Michael E. Jones (SBN: 10929400)
  mikejones@potterminton.com
Allen Franklin Gardner (SBN: 24043679)
  allengardner@potterminton.com
**POTTER MINTON**
A Professional Corporation
110 N. College, Suite 500
Tyler, Texas 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

Andrea Pacelli (admitted *pro hac vice*)
  andrea.pacelli@wilmerhale.com
**WILMER CUTLER PICKERING**
  **HALE AND DORR LLP**
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

William F. Lee (admitted *pro hac vice*)
  william.lee@wilmerhale.com
Louis W. Tompros (admitted *pro hac vice*)
  louis.tompros@wilmerhale.com
Richard A. Goldenberg (admitted *pro hac vice*)
  richard.goldenberg@wilmerhale.com
Rachel I. Gurvich (admitted *pro hac vice*)
  rachel.gurvich@wilmerhale.com
Andrew J. Danford (admitted *pro hac vice*)
  andrew.danford@wilmerhale.com
Kelli J. Powell (admitted *pro hac vice*)
  kelli.powell@wilmerhale.com
Dana O. Burwell (admitted *pro hac vice*)
  dana.burwell@wilmerhale.com
Allison Trzop (admitted *pro hac vice*)
  allison.trzop@wilmerhale.com
**WILMER CUTLER PICKERING**
  **HALE AND DORR LLP**
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Rachel W. Cohen (admitted *pro hac vice*)
  rachel.cohen@wilmerhale.com
**WILMER CUTLER PICKERING**
  **HALE AND DORR LLP**
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

**ATTORNEYS FOR**
**DEFENDANT CISCO SYSTEMS, INC.**

**CERTIFICATE OF SERVICE**

      I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on August 3, 2015.

                                                                   */s/ Michael E. Jones*