# EXHIBIT

# 1

```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF TEXAS
 2                    MARSHALL DIVISION

 3  SYNQOR, INC.,                  *   CASE NO. 2:14-cv-286
                                   *
 4       Plaintiff,                *
                                   *
 5  VS.                            *
                                   *
 6                                 *
    CISCO SYSTEMS, INC.,           *   Texarkana, Texas
 7                                 *   November 5, 2015
         Defendant.               *   10:01 a.m.
 8  ------------------------------------------------------------

 9

10          REPORTER'S TRANSCRIPT PRE-TRIAL CONFERENCE

11                VOLUME I (PAGES 1 - 209)

12        BEFORE THE HONORABLE CAROLINE M. CRAVEN

13             UNITED STATES MAGISTRATE JUDGE

14

15  ------------------------------------------------------------

16  APPEARANCES:

17  FOR THE PLAINTIFF:   (See sign-in sheets docketed with the
                          minutes of this hearing.)
18
    FOR THE DEFENDANT:   (See sign-in sheets docketed with the
19                        minutes of this hearing.)

20  COURT REPORTER:      BRENDA HIGHTOWER BUTLER, CSR, RPR, FCRR
                         Official Court Reporter
21                       Eastern District of Texas
                         Texarkana Division
22                       500 N. State Line Avenue
                         Texarkana, Texas  75501
23                       903.794.1018
                         brenda_butler@txed.uscourts.gov
24
    (Proceedings recorded by mechanical stenography, transcript
25  produced on CAT system.)
```

1   purpose, so...

2              Okay.  No. 7.

3              MR. HATCHER:  All right.  Your Honor, category No. 7

4   deals with the '021 patent.  And more specifically, the

5   reexamination files for the '021 patent.

6              Again, the Court granted SynQor's MIL No. 3

7   precluding Cisco from introducing evidence, argument or

8   testimony relating to the validity of patent claims not

9   asserted at trial.

10             SynQor has narrowed its case by withdrawing the '021

11  claims.

12             THE COURT:  Uh-huh.

13             MR. HATCHER:  These claims are now non-asserted, so

14  they are covered by the ruling on MIL No. 3.  Cisco, therefore,

15  cannot introduce evidence, argument or testimony regarding the

16  validity of those claims.

17             Now, Cisco's stated intent to maintain a DJ action on

18  the '021 claims does not change this result.  SynQor is not

19  asserting these claims, so they are covered by the Court's

20  ruling on SynQor's MIL No. 3, which precludes Cisco from

21  introducing evidence, testimony or argument regarding the

22  validity of unasserted claims.

23             The Court's ruling on MIL No. 4 also applies.  It

24  precludes Cisco from introducing evidence concerning the

25  reexaminations, quote, should willfulness not be an issue at

```
 1    trial.

 2               As to the '021 claims, willfulness is not an issue at

 3    trial.  SynQor is not asserting willfulness of any '021 claims

 4    now.

 5               Since willfulness is not at issue, the only purpose

 6    in introducing the '021 reexam would be on the issue of

 7    validity.  But the '021 reexam is not final.  And it is well

 8    established that in progress reexams are more prejudicial than

 9    probative and routinely excluded on that basis.

10               And we cited some examples of that in our argument

11    outlines, cases holding that in our argument outline, Your

12    Honor.

13               In particular, the differences between the burden of

14    proof can be confusing to a jury as reexams have a lower

15    standard of proof, preponderance of the evidence, than the jury

16    will be using here, clear and convincing evidence.

17               Now, Cisco argues that SynQor's narrowing of its

18    claims undermines the credibility of its infringement

19    allegations for the remaining claims.

20               That's simply not true, Your Honor.  SynQor on

21    several occasions, including at Cisco's urging and the Court's

22    own orders on narrowing claims, has narrowed the claims as

23    we've gotten closer to trial in order to streamline.  It

24    doesn't -- it doesn't undermine our credibility.  That's --

25               THE COURT:  Okay.  Let me hear from Cisco real quick.
```

1   What is it -- what is it that you guys want to -- why do you

2   think this is relevant?

3           MR. TOMPROS:  Your Honor, this is very important for

4   several reasons.  First, we have a declaratory judgment claim

5   as to the invalidity and non-infringement of the '021 patent.

6   SynQor has not, at least not yet, given us a covenant not to

7   sue.  And we're, therefore, entitled to pursue our

8   non-infringement and invalidity counterclaim in this case.

9           I think candidly, Your Honor, Mr. Hatcher may have

10  identified a -- a problem with the way that the Court's motion

11  in limine order is written, or at least the way that SynQor is

12  interpreting it.

13          Under the Court's motion in limine order, it is true

14  that the Court has said that Cisco cannot introduce evidence of

15  the invalidity of unasserted claims.  But here we now have a

16  claim that we have a declaratory judgment counterclaim of

17  invalidity for.  We clearly should be permitted to assert

18  invalidity of a claim for which we have a counterclaim of

19  invalidity.

20          And I would respectfully suggest that to the extent

21  that -- I think that SynQor is incorrectly interpreting it.

22  But to the extent that the Court's intent was that, that

23  motion's ruling should be reconsidered.

24          Then as to the '021 reexam more broadly, there is a

25  significant question here again because willfulness is in the

1    case still.  And the Court has said that willfulness -- that

2    the reexams are admissible for willfulness.

3           To understand what going on here, I think the

4    timeline and the relationship between the patents matters.  At

5    the time of the -497 case, which is when -- which is what

6    SynQor bases its willfulness claim on, all of the asserted

7    claims stood rejected in reexam.  They were all rejected in

8    reexam.

9           Then there was a whole series of proceedings at the

10   Patent and Trademark Office where things got undone.  The claim

11   that most recently that the Patent Trial and Appeal Board

12   issued a judgment on affirming the rejection of all claims was

13   the '021 patent.  So that has been -- that was rejected.

14          Then the Court entered the motion in limine rulings

15   precluding reliance on reexams unless there was willfulness in

16   the case, which there is, and then precluding -- the rule on

17   validity of unasserted claims.

18          After that, two or three days ago, SynQor chose to

19   drop the '021 patent.  And now says that because it has made

20   this choice in this paradigm, all the sudden that we can't rely

21   on this same reason.

22          THE COURT:  Okay.

23          MR. TOMPROS:  A key point here is that the '021

24   reexam, in that reexam itself, there were significant

25   statements both made by SynQor and made by the Patent Trial and

1    Appeal Board that affect the other claims.

2            And if I could just very briefly --

3            If we could put up DTX2231 at Page 16.

4            There's a -- right here, if we go to this Page 14.

5            Go two more pages down, sorry.  Page 16 of the

6    internal brief.  Almost there.  Thank you.

7            This paragraph here beginning at the middle of the

8    page.  If you blow up that bottom sentence it says:  At no

9    point in the District Court CAFC or in -- sorry.

10           This is SynQor's statement to the Patent Trial and

11   Appeal Board:  At no point in the District Court, Federal

12   Circuit, or in any related concurrent inter partes

13   reexamination proceeding has any entity or respondent attempted

14   to parse the secondary consideration evidence between or among

15   the five related patents.

16           So what happened in the '021 reexam was the Patent

17   Trial and Appeal Board said the secondary consideration

18   evidence -- considerations evidence invalidates all of the

19   claims.  SynQor says at no point has that evidence ever been

20   any different among any of the patents.

21           At minimum, that is evidence that we were objectively

22   reasonable on the other patents and objectively reasonable in

23   our brief that they were invalid.  So if objective

24   reasonableness for willfulness is going to the jury, this is

25   critical evidence of that objective reasonableness.

1          And then just to be clear, SynQor's other argument

2     about finality, is just wrong.  This is a final judgment of the

3     Patent Trial and Appeal Board.  It is a decision on appeal in

4     that case.  It is true there are, you know, potential --

5          THE COURT:  Okay.

6          MR. TOMPROS:  -- for that, but it is final.

7          THE COURT:  Thank you.

8          Briefly, Mr. Hatcher.

9          MR. HATCHER:  Yes, Your Honor.

10          Your Honor, it's a non-final decision.  It was a

11     decision by the PTAB, but there's a motion for reconsideration

12     filed and being -- and awaiting the PTAB's consideration.  And

13     then after that, it still won't be a final decision.  It will

14     be appealed to the Federal Circuit.  We're years away from any

15     potential final decision in this particular reexam.

16          This is a perfect example of someone cherry-picking

17     quotes out from a brief out of context and arguing that they're

18     somehow relevant.  It's a different burden of proof at the PTAB

19     compared to what the jury will consider.  That's why Courts

20     traditionally and uniformly -- maybe not uniformly -- but often

21     exclude non-final reexams.

22          Here, these are now unasserted claims.  The fact that

23     they want to bring in a DJ claim against unasserted claims just

24     shows that they're gaming the system in order to try to get

25     this material in for unasserted claims.

1          And -- and I would say, Your Honor, this is the first

2    time we heard from Mr. Tompros or anyone at Cisco that a

3    covenant not to sue might resolve this issue.  It sounds like

4    if the parties can hash out --

5          THE COURT:  I'm going to table this and let y'all

6    talk about it.  I'll have something by the end of the day

7    unless I hear from you first.

8          Okay.  No. 8.  And we're just going to take up a

9    couple more, and then we're going to take a break and come back

10   and finish.  We've got to talk about our afternoon.

11         Okay.

12         MR. HATCHER:  Yes, Your Honor.  MIT ownership

13   documents.

14         Here again, Cisco's story to this Court on relevance

15   is newly minted.  Until now, Cisco only alleged the MIT

16   ownership documents were relevant to equitable defenses,

17   unclean hands specifically.  And we submitted their

18   interrogatory response, which is their latest interrogatory

19   response.

20         And in that latest interrogatory response, the only

21   time they talk about the MIT ownership documents is in response

22   to a portion of an interrogatory addressing whether SynQor's

23   claims for relief in whole or in part are barred by the

24   doctrine of unclean hands.

25         The, quote, nature of invention that Cisco discusses

1    give everybody enough time?  That's like 50 minutes.  Does that

2    work?

3              MR. TOMPROS:  Yes, Your Honor.

4              THE COURT:  And I have a cake that someone gave us,

5    and I'm going to put it in a window out there.  And it's

6    really, really good.  And I apologize that we don't have any

7    forks, but we have spoons.  So if you can't get away and you

8    want to work, you can have a sugar fix.

9              Okay.  So we'll see you at -- what did I say, 20

10   after?  No, 1:30.  1:30.

11             Okay.  We're in recess.

12             COURT SECURITY OFFICER:  All rise.

13             (Court in recess.)

14             COURT SECURITY OFFICER:  All rise.

15             THE COURT:  Please be seated.

16             All right.  Are y'all ready?

17             Okay.  Going back, I believe that we are now on

18   No. 12 of Plaintiff's objections.

19             MR. REIN:  Your Honor, before we do that, can I

20   provide a quick report on the '021 reexaminations and the

21   discussions we had with Cisco on that?

22             THE COURT:  Yes.

23             MR. REIN:  So as Your Honor knows, Cisco has

24   indicated that it intends to proceed on its declaratory

25   judgment claim on the '021 patent to justify admitting the

```
1   reexamination on that patent.  And we indicated that we are

2   willing to provide an appropriately narrow covenant not to sue

3   to moot the case in controversy under the '021 patent.

4        And they agree that that will -- that would indeed

5   moot the '021 patent from being asserted in front of the jury;

6   but nonetheless, they still want the reexamination of the '021

7   patent to come in and -- in evidence.

8        We will only provide a covenant not to sue if the

9   Court follows the motion in limine rulings that have already

10  been issued by this Court.  And pursuant to that, the '021

11  reexaminations are kept out in accordance with those rulings.

12       Now, I suspect that Cisco will raise this issue with

13  Judge Schroeder if the -- if Your Honor's MIL rulings on this

14  remain as they are.  And I suspect that if the MIL rulings are

15  altered, we will raise it with Judge Schroeder as well.  And,

16  of course, any covenant not to sue would be contingent in our

17  view on the reexamination staying out.

18       So that's kind of where we are on the '021

19  reexamination issue.  I thought it would save time not to go

20  into the -- rehashing the arguments as to why we think it ought

21  to be kept out and why they think it should come in.

22            THE COURT:  Okay.  Thank you very much, Mr. Rein.

23            MR. TOMPROS:  I think, candidly, Your Honor, what

24  that means is that the decision on the '021 reexam really has

25  to be made on the merits.  That the covenant to sue one way or
```

 1    the other because of the contingency because of the rest of it,

 2    it all -- it all hinges on the ruling.  So Your Honor has the

 3    issue.

 4           I'm not sure that there's any way that the parties

 5    can navigate through the admissibility of that reexam.  Our

 6    position continues to be that it's relevant to willfulness of

 7    all the patents.

 8           THE COURT:  Even if the counterclaim issue is gone?

 9           MR. TOMPROS:  The answer is yes, Your Honor, for all

10    the reasons we've discussed before.  The '021 reexam, because

11    as SynQor has said, all reexam secondary consideration evidence

12    is together and because this is part of the overall SynQor

13    portfolio that was asserted in the -497 case, which is the

14    basis for their willfulness claim, that it still should be

15    admissible again only if willfulness is in and only as a

16    response to the objective reasonableness of Cisco's willfulness

17    defenses.

18           So yes, we still contend that that is right.  That's

19    why, unfortunately, the covenant doesn't -- there's no clean

20    way to navigate the covenant.  We do agree, certainly, that if

21    we receive an appropriate covenant not to sue to satisfy the

22    requirements of the SuperSat case that we would not -- we'd be

23    precluded from bringing our counterclaims.  And we understand

24    that.  But I don't think that there's a way to navigate that

25    without the Court -- without the Court deciding the '021 motion

1    itself.

2            THE COURT:  Okay.  I'm going to take that under

3    advisement, and I'll come back with something after the next

4    break.  I just want to do some thinking on that.

5            All right.  Thanks for trying.

6            Okay.  No. 12.

7            MR. HATCHER:  Your Honor, Mike Hatcher again.  Excuse

8    me.

9            Category No. 12, this is a single exhibit.  It is an

10   e-mail, DTX322.  Your Honor will note that there is a

11   settlement agreement, a final signed, executed settlement

12   agreement that has been agreed to be admitted between Fujitsu

13   and SynQor.

14           In the course of negotiating that settlement

15   agreement, there were some e-mail exchanges between SynQor and

16   Fujitsu.  This is one of them.  So this is a compromise

17   settlement communication.  This isn't the actual final

18   settlement agreement.  This is the back-and-forth trying to

19   reach agreement.

20           SynQor wants -- I'm sorry.  Cisco wants to admit this

21   into evidence.  It should be precluded under Rule 408 as a

22   statement made during compromise negotiations.  Cisco, in

23   response -- there are some exceptions to that rule.  Cisco does

24   not argue any of the exceptions in the response.  Instead,

25   Cisco argues that Federal Rule of Evidence 408 would only

1          MR. TOMPROS:  Your Honor, do you have a -- we're

2     proceeding from the Cisco objection brief document?

3          THE COURT:  Yes, that's the one I've been looking at,

4     330.  Does that work for y'all?

5          MR. TOMPROS:  330.  That's great.

6          Thank you.

7          COURT SECURITY OFFICER:  All rise.

8          (Court in recess.)

9          COURT SECURITY OFFICER:  All rise.

10         THE COURT:  Please be seated.

11         All right.  Before we move on to Cisco's objections,

12    just to go back to No. 7.  The Court, after much consideration,

13    is going to overrule SynQor's objection to No. 7, which is the

14    reexam, the '021 reexam.

15         That leaves only, I think, No. 5, which you guys were

16    going to do a little brief which explains or which puts where

17    the exhibits fall into certain parts of the timeline.  And just

18    Monday or Tuesday if y'all can put that together.  Unless you

19    can do it tonight, and we can talk about it tomorrow.

20         MR. HATCHER:  Your Honor, I actually just reviewed

21    it, and it's going to be filed in a few minutes.

22         THE COURT:  Okay.  That was fast.

23         MR. DANFORD:  We'll have to file our version of the

24    brief a little bit later than that.

25         THE COURT:  Okay.

1   No. 1.

2            THE COURT:  Go ahead.

3            MR. BURWELL:  So Category No. 1 is a group of

4   exhibits that SynQor professes to offer from the -497 and -444

5   cases.  SynQor says that these documents -- that they will not

6   offer these documents not to establish anything so as not to

7   contravene the Court's MIL order, but it will offer them for

8   willfulness.

9            But to the extent that SynQor believes that these

10  documents somehow establishes that Cisco willful infringed, you

11  must accept the proposition that the documents establishes

12  infringement or invalidity or the lack of non-infringing

13  alternatives, which is precisely what they're not allowed to do

14  under the Court's MIL order.

15           I would also add that none of these documents are

16  actually documents that demonstrate Cisco's awareness of

17  anything.  They're Court files.  They're orders.  They are

18  statements from the -497 Defendants, which are hearsay.  They

19  are their motions to stay an injunction.  There's very little

20  from Cisco in here at all.

21           There's nothing in these documents that's necessary

22  to show any of the propositions for what SynQor offers them

23  for; including, for example, the denial of sur-petition at the

24  Supreme Court.  There's no evidence that Cisco was ever aware

25  of that or what that is relevant to to anything in this case.

1          THE COURT:  All right.  Thank you.

2          MR. HATCHER:  Your Honor, these are these orders --

3   these are orders from the -497 and I believe the -444 case,

4   such as the jury verdict form, the injunctions that were

5   entered in that case.

6          We'll state unequivocally that we're not going to

7   violate MIL 1.  MIL 1 precludes us from arguing that the

8   findings or the conclusions from the prior litigations

9   establishes the following proposition:  That SynQor's patents

10  are valid, that there --

11         THE COURT:  Right.

12         MR. HATCHER:  We're not going to argue the -497 jury

13  found the patents valid, therefore --

14         THE COURT:  But you're saying you're going to use

15  them to prove up the number of old CPN units; is that right?

16         MR. HATCHER:  First, they go to proving up the old

17  CPN units that were compensated.  And they also do go to

18  willfulness, state of mind.  Cisco has put its state of mind on

19  willfulness at issue.

20         Once it puts its state of mind at issue, we have to

21  consider everything it knew.  And one of the things it knew is

22  that there had been a jury verdict finding that the patents

23  were valid.

24         We're not going to argue that that means that this

25  jury should therefore find that the -- that the patents are

 1   valid.  This jury is going to have to make that determination

 2   itself.  But Cisco wants to say that it didn't -- it's not a

 3   willful infringer; that it didn't subjectively intend to

 4   infringe.  It can't on the one hand say that, and then preclude

 5   us from presenting evidence showing -- that conflicts with the

 6   very idea that's it's --

 7           THE COURT:  I can appreciate what you're trying to

 8   do, but it's such a fine line that I don't think that you're

 9   going to -- in effect, to make an in-run around that motion in

10   limine, so that's sustained.

11           MR. HATCHER:  Well, Your Honor, when you say the

12   "motion in limine," I believe that their motion in limine on

13   this was denied.

14           THE COURT:  I'm sorry.

15           No.  I thought it was --

16           MR. HATCHER:  Well, I mean, it does not preclude

17   either party from discussing that they establish them, but

18   we're not using them to establish.

19           And I also would say, Your Honor --

20           THE COURT:  No, it was granted.

21           And yes, so that's my ruling.

22           MR. HATCHER:  Okay.  Yes, Your Honor.

23           THE COURT:  It's sustained.

24           Okay.  No. 2.

25           MR. DANFORD:  Your Honor, category No. 2 is a

1   which is what I had intended to do, but I wanted to hear from

2   you on it.

3           I think that 25 has been withdrawn; is that correct?

4           MR. HATCHER:  That's correct, Your Honor.

5           MR. TOMPROS:  26, I think the only remaining thing is

6   another hearsay issue which we would say is like the others?

7           THE COURT:  Yes, like the others.

8           No. 27.

9           MR. BURWELL:  No. 27, that's another series of

10  documents from the -497 case.  These are pleadings that were

11  entered after the injunction trying to persuade the Court to

12  issue a stay.  Several of these pleadings were issued not by

13  Cisco, but by the suppliers, and are therefore hearsay.

14          And our submission is that if the jury were to read

15  these documents, they would be confused and be persuaded to

16  take as a given that the patents are infringed and at the very

17  valid given the time period that these documents were entered

18  seeking an injunction.

19          THE COURT:  Okay.  Thank you.

20          How are you going to use them?

21          MR. HATCHER:  Your Honor, these are -- the Cisco

22  briefs are admissions of a party opponent, and they're clearly

23  relevant to the issues.  Even the -- even the briefs that are

24  from the -497 suppliers, these are the briefs when the -497

25  permanent injunction went up on appeal.

```
 1              By that time, Cisco and the -497 suppliers -- most of

 2   the -497 suppliers that were going up on appeal had reached

 3   indemnity agreements.  And agreements that weren't just

 4   indemnity agreements, but required, Cisco required in these

 5   agreements the -497 Defendants to prosecute this appeal and

 6   other appeals however Cisco wanted.

 7              So even the statements by the -497 Defendants are

 8   statements of --

 9              THE COURT:  Okay.  Are these pleadings that are in

10   the -497 injunction stay?  Is that what I'm hearing about?

11              MR. HATCHER:  Yes.

12              THE COURT:  Okay.  It does not sound like it for a

13   second.  And tell me exactly what they are.

14              MR. HATCHER:  So once the permanent junction issued,

15   there was a temporary stay issued by Judge Ward to allow the

16   -497 Defendants to file an emergency motion with the Federal

17   Circuit.  They did, and Cisco filed an emergency motion to

18   intervene in that appeal of the permanent injunction.  This is

19   all in January and early February of 2011.

20              THE COURT:  And why are you wanting to admit them, to

21   prove what?

22              MR. HATCHER:  There are statements in there that go

23   to damages, the calculation of damages and the -- and the

24   absence of non-infringing alternatives.  There are absolute

25   statements in there about the absence of non-infringing
```

1    alternatives, and that there will not be non-infringing

2    alternatives until September of 2011 for -- for at least

3    certain of the products.

4           These are admissions of the party opponent, Your

5    Honor, that were on relevant issues that we're entitled to rely

6    upon.

7           THE COURT:  Right.  And so if somebody denied those

8    statements were made, then, I mean, it would be perfect for

9    impeachment.  But I don't know that I can see it just being

10   trotted out with someone's testimony.  I mean, are...

11          MR. HATCHER:  Our experts rely upon them, Your Honor,

12   and they'll be able to put them forth.

13          THE COURT:  Again, I'm not convinced about that.  I'm

14   not sure.  I'm concerned about the prejudicial impact of this.

15          Let me take 27 under advisement.  I'm just bothered

16   by it.

17          Okay.  No 28.

18          MR. DANFORD:  If you could call up PTX980.

19          Your Honor, these are a set of the indemnity

20   agreements, these are the actual indemnity agreements that were

21   entered into between Cisco and the -497 Defendant suppliers

22   after the jury verdict in the -497 case.

23          And as I understand it, SynQor intends to offer these

24   as evidence of willfulness basically to suggest that Cisco

25   acted wrongfully by encouraging the suppliers to keep selling

1              Now, they say that the other products --

2              THE COURT:  I'm going to -- I'm going to overrule the

3     objection --

4              MR. HATCHER:  Thank you, Your Honor.

5              THE COURT:  -- to 2161.

6              MR. HATCHER:  I have nothing further on that then.

7              THE COURT:  Okay.

8              I think that takes us to 65.

9              MR. TOMPROS:  Your Honor, I think 65 is another

10    hearsay business record issue.

11             THE COURT:  Okay.

12             MR. HATCHER:  Yes.  So it will rise and fall --

13             THE COURT:  Okay.  Does that take care of all of

14    Cisco's objections to SynQor's exhibits?

15             MR. TOMPROS:  It does, Your Honor.

16             THE COURT:  All right.

17             Well, here's what's going to happen next.  This gets

18    really fun.  You have the rulings on all but one, which I will

19    get to you on, which is No. 27.  I want you to please take

20    these rulings -- and shortly, like in about five or ten

21    minutes, I'm going to come back out and tell you about the

22    witnesses so you can apply all of this to the objections to the

23    deposition designations.

24             We have tomorrow to go over those.  I will tell you

25    that with the sheer number that I've seen so far, you know,

```
 1              THE COURT:  Please be seated.
 2              Okay.  Going back on the record.
 3              The Court has decided that with regard to the
 4  SynQor's objections to the ten witnesses that it believes were
 5  identified, the Court is going to sustain that objection.
 6              That's the good news for you.
 7              The bad news is -- in all seriousness, I had left
 8  No. 27, and the Court has looked at that and is going to
 9  sustain Cisco's objection to that.
10              Okay.  So do y'all have any questions about what it
11  is you're supposed to do between now and tomorrow?
12              MR. TOMPROS:  Not from us, Your Honor.
13              THE COURT:  So I need for y'all to have tomorrow
14  something for me to look at up here where I can also go
15  through.  And really do apply the rulings that I made today to
16  what happened.
17              And if there are so many rulings having to do with
18  form of the question or responsiveness and that sort of thing,
19  objection, form, I mean, just all throughout the entire thing,
20  no.  No, no.  We're not going to deal with that.
21              Also, can we get started tomorrow at 9:30?  Is that
22  too early or too late for anybody?  And we will work hard to
23  get through it.
24              MR. TOMPROS:  That's fine for us, Your Honor.
25              Just to clarify, do you want us to file something on
```